FILED
AUG 08 2008
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| S.J. LOUIS CONSTRUCTION, INC., John Doe and Jane Doe, | * * * | CIV. 08-4077 |
| Plaintiff, | * * | MEMORANDUM OPINION AND ORDER RE: MOTION TO DISMISS FOR LACK OF STANDING |
| vs. | * * | |
| LEWIS & CLARK REGIONAL WATER SYSTEM, | * * * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff S.J. Louis Construction, Inc.,(SJL) brought this diversity action requesting injunctive and declaratory relief and later filed a motion for temporary restraining order against Defendant Lewis & Clark Regional Water System(Lewis & Clark) for alleged violations of South Dakota's competitive bidding laws in connection with a construction project for which SJL was an unsuccessful bidder. Doc. 1, 18. Lewis & Clark filed a Motion to Dismiss alleging SJL's lack of standing and failure to state a claim upon which relief can be granted. Doc. 5. The Court heard argument on all pending motions on July 23, 2008, and granted SJL's oral motion to amend its Complaint to add John Doe and Jane Doe as Plaintiffs. For the reasons stated in this Memorandum Opinion, the Court is granting the Motion to Dismiss because of Plaintiffs' lack of standing to bring the action set forth in the Complaint.

## FACTUAL BACKGROUND

SJL alleges in its Complaint that it is a Minnesota corporation and general contractor in the business of performing infrastructure projects. SJL is a taxpayer that has performed several contracts for Lewis & Clark. Lewis & Clark is a nonprofit corporation recognized by the State of South Dakota with headquarters in Sioux Falls, South Dakota. Lewis & Clark's membership includes fifteen municipalities and five rural water systems in South Dakota, Minnesota and Iowa. SJL receives most of its funding from the federal government and receives secondary funding from the States of Minnesota, Iowa, and South Dakota.[1] Lewis & Clark has eminent domain powers.[2]

---

[1]S.D.C.L. § 46A-1-13.10 provides:
Pursuant to §§ 46A-1-11 to 46A-1-13, inclusive, construction of the South Dakota project

On April 7, 2008, Lewis & Clark entered into a Grant Agreement with the South Dakota Conservancy District, acting through the Board of Water of Water and Natural Resources and the Department of Environment and Natural Resources, regarding $6,400,000 in grant money to be applied to the construction project in issue in this lawsuit. Paragraph 30 of the Grant Agreement provides: "Grantee agrees to follow the competitive bidding procedures set forth in SDCL chapter 5-18 in constructing the Project, notwithstanding that Grantee is not a public corporation as defined in that chapter."[3]

In March of 2008, Lewis & Clark solicited bids for the construction project known as the

---

features of a two hundred seventy-two million eight hundred thousand dollar Lewis and Clark Rural Water System as generally described in the report "Feasibility Level Evaluation of a Missouri River Regional Water Supply for South Dakota, Iowa and Minnesota" dated September 1993, is hereby authorized for the purposes of providing safe and adequate municipal, rural and industrial water supplies as well as mitigation of wetlands and water conservation in the counties of Union, Clay, Lincoln, Turner, Minnehaha, McCook, and Lake.

There is hereby authorized state grants in the amount of nineteen million six hundred eighty-five thousand dollars ($19,685,000), or so much thereof as may be necessary, to provide the State of South Dakota's portion of the nonfederal matching requirement for the Lewis and Clark Rural Water System. No disbursements may be made under the grant authorized by this section unless funds are appropriated by the Legislature. Grant terms and conditions shall be set by the Board of Water and Natural Resources.

The grant authorized by this section may be increased or decreased by such amounts as may be justified by reason of ordinary fluctuations in development costs incurred after September 1993, as indicated by engineering costs indices applicable for the type of construction involved.

For purposes of § 1.103-1 of the federal income tax regulations, Lewis and Clark Rural Water System, Inc. is hereby recognized as a corporation authorized to act on behalf of its members, including its South Dakota member governmental units, to provide drinking water to their communities, and to issue debt obligations in its own name on behalf of some or all of its members. However, no South Dakota member governmental unit is liable for the payment of principal of or interest on such obligations.

[2]*See* S.D.C.L. § 46-8-1; *Lewis & Clark Rural Water System, Inc. v. Seeba,* 709 N.W.2d 824 (S.D.2006).

[3]The Court notes that Paragraph 26 of the Grant Agreement provides that any lawsuit pertaining to or affecting the Grant Agreement is to be venued in State Court in the Sixth Judicial Circuit in Hughes County.

2

"Lewis & Clark Treated Water Pipeline Segments 7B and 8." This project involved the installation of pipeline segments near Vermillion, South Dakota. The project's solicitation documents, which were prepared by the project's engineer, stated that only qualified bidders could be awarded the contract. To be a qualified bidder, the bidder had to be able to demonstrate significant experience on at least three successful projects of similar size, using the same type of pipe as specified for this project, within the last ten years. The bids were required to be submitted no later than 2:00 p.m. on May 15, 2008, and the apparent bid winner was required to submit a list of all subcontractors and suppliers to the project's engineer within 48 hours of bid opening.

Don Kelly Construction was the apparent low bidder, and Lewis & Clark awarded Don Kelly Construction the project's contract. SJL alleges that Don Kelly Construction submitted its bid at least 20-30 seconds after the 2:00 p.m. deadline, failed to submit a list of vendors within the required time limit, failed to comply with the experience requirements, specifically, that it failed to have experience with the soils encountered with the project and failed to establish that it had performed at least three projects with the same pipe to be used for the project. SJL submitted an administrative protest of the award of the project's contract to Don Kelly Construction and Lewis & Clark denied the administrative protest. SJL then commenced this lawsuit.

## DISCUSSION

Although a court, in considering a motion to dismiss, must accept as true factual allegations in a plaintiff's complaint, it need not accept as true the plaintiff's legal conclusions, even if they are cast in the form of factual allegations or go to the merits of the suit. *Ashley v. United States Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005). In determining a motion to dismiss this Court may consider documents attached to the Complaint and matters of public and administrative record referenced in the Complaint. *Great Plains Trust Co. v. Union Pacific R.R. Co.*, 492 F.3d 986, 990 (8th Cir. 2007). In addition, since this Court is sitting in diversity it applies state substantive law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 416 (1996); *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). In determining standing on state law claims, this Court applies South Dakota law relevant to the standing issue. *See, e.g., Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 747 (8th Cir. 1982)(diversity case applying Missouri law on standing issue).

In *H & W Contracting, LLC v. City of Watertown*, 633 N.W.2d 167 (S.D. 2001), the South

3

Dakota Supreme Court addressed the circumstances in which a disappointed bidder has standing to challenge an alleged violation of South Dakota's competitive bidding laws in a case involving a city awarding a contract for the replacement of a storm sewer. In an earlier decision the South Dakota Supreme Court had held that the lowest bidder was not an "aggrieved person" under a competitive bidding statute by reasoning that the requirement that contracts shall be let to the lowest responsible bidder was intended for the protection of the public rather than that of the bidders. The court thus concluded that no legally enforceable right vested in the lowest bidder based on his status as the lowest bidder. *See Tri-State Milling Co. v. Board of County Com'rs*, 75 S.D. 466, 68 N.W.2d 104 (1955).

In *H & W Contracting*, the South Dakota Supreme Court adopted a limited exception to the standing rule announced in *Tri-State* to allow disappointed bidders standing to sue on behalf of the public's interest in circumstance "[w]hen the bidding process has been undermined by 'favoritism, improvidence, extravagance, fraud [or] corruption,'" *H & W Contracting*, 633 N.W.2d at 172 (quoting *Fonder v. City of South Sioux Falls*, 76 S.D. 31, 34, 71 N.W.2d 618, 620 (1955)). To proceed under this limited exception the disappointed bidder must at least establish, at a pre-trial evidentiary hearing, a colorable claim, or prima facie case, of favoritism, improvidence, extravagance, fraud, or corruption before it will be allowed to proceed with its claim against governmental agencies for a violation of the competitive bidding statutes. 633 N.W.2d at 172.

In the case at hand, however, before the Court considers whether SJL can establish a prima facie case under the standing exception set forth in *H & W Contracting*, it must first be established that Lewis & Clark is subject to South Dakota's competitive bidding laws. "[A]ll contracts of any public corporation" if they meet the statutory dollar amount are subject to South Dakota's competitive bidding laws. *See* S.D.C.L. § 5-18-2. "Public corporation" is defined by statute as "the state and all counties, municipalities, public school corporations and all officers, boards or commissions empowered by law to enter into contracts for the construction of public improvements." S.D.C.L. § 5-18-1(2). In addition to the statutory definition of a public corporation, South Dakota case law has further refined the definition of "public corporation" and set forth the considerations pertinent to distinguishing a private corporation from a public corporation.

In *Dahme Constr. Co. v. Web Water Dev. Ass'n*, a case in which a disappointed bidder on a contract for a rural water system brought an action alleging a violation of S.D.C.L. § 5-19-3, which gives a resident bidder a preference on a public contract, the South Dakota Supreme Court set forth

4

the following test to determine the classification of a corporation as public or private:

> The legal test between a private and a public corporation is whether the corporation is subject to control by public authority, state or municipal. To make the corporation a public one, its managers, whether trustees or directors, must be not only appointed by public authority but [also] subject to its control.

438 N.W.2d 550, 553 (S.D. 1989)(citing *Kerr v. Enoch Pratt Free Library*, 54 F.Supp. 514, 523 (D.Md.1944), *rev'd on other grounds*, 149 F.2d 212 (4th Cir.1945); *Jensen v. Juul*, 66 S.D. 1, 278 N.W. 6 (1938)).

In the *Dahme* case, the Defendant WEB, a South Dakota nonprofit corporation operating a rural water system in South Dakota, invited individuals, municipalities and other rural water associations to become members of the nonprofit corporation. Upon payment of a membership fee, these members were allowed to purchase water from WEB. Most of the construction funds for WEB's construction project were provided by the United States Department of the Interior, Bureau of Reclamation, which had provided WEB approximately 70 million dollars. WEB also received money from the Oahe Conservancy Sub-District as a separate entity which no longer existed at the time of appeal but at the time of appeal was under the administration of the South Dakota Department of Water and Natural Resources. 438 N.W.2d at 551.

The South Dakota Supreme Court in *Dahme* concluded that the Defendant WEB, was a private, not a public corporation. In reaching this conclusion the court stated, "Although it is engaged in constructing a public work and receives substantial amounts of public funding, these factors are not sufficient to classify WEB as a public corporation." 438 N.W.2d at 553(citing *Wright v. No Skiter, Inc.*, 774 F.2d 422 (10th Cir.1985)). The court further reasoned that to be classified as a public corporation under the test it applied required elements of governmental regulation or control, which did not exist in WEB's case. The court pointed out that WEB's board of directors were not appointed but were elected by the corporation's members, and with the exception of being obligated to follow federal procurement standards, this board of directors was relatively free of governmental control.

The South Dakota Supreme Court has also examined the features which distinguish a private corporation from a public corporation in determining whether an entity is entitled to sovereign immunity. In *Aune v. B-Y Water Dist.*, 464 N.W.2d 1 (S.D.1990), a water user district was

5

determined to be a private corporation not entitled to sovereign immunity. In making this determination the court characterized public corporations as those "established and controlled by the state for public purposes." *Aune,* 464 N.W.2d at 2-3 (quoting *Jensen v. Juul,* 66 S.D. 1, 5, 278 N.W. 6, 8 (1938)). The court in *Aune* stated that in distinguishing between governmental and commercial activity, a court should assess whether the activity is something only the state can accomplish or whether it could be effectively accomplished by a private enterprise. The court then concluded that the "delivery of water is not an inherently governmental activity that only the state can effectively accomplish."*Aune,* 464 N.W.2d at 3. The court further observed that a water user district has no power of taxation and that no governmental authority has the power to pay any indebtedness or obligations that have been incurred by a water district. *Id.* (citing S.D.C.L. § 46A-9-47). The court in *Aune* further noted that a water user district's governing body is not publicly elected. *Aune,* 464 N.W.2d at 3 n.4.

In the case at hand, Lewis & Clark is a nonprofit corporation engaged in a commercial purpose which "is not an inherently governmental activity." It does not have the power of taxation and its directors are not publicly elected. No South Dakota member governmental unit is liable for the payment of principal or interest on any of Lewis & Clark's obligations. *See* S.D.C.L. § 46A-1-13.10. Although Lewis & Clark receives a substantial amount of public funding and must follow procurement requirements, it lacks the requisite governmental control to be classified as a public corporation under South Dakota law. It is therefore not required by statute to comply with South Dakota's competitive bidding laws. SJL and John and Jane Doe, therefore, lack standing to bring an action against Lewis & Clark based on Lewis & Clark's failure to abide by South Dakota's competitive bidding statutes.

SJL, in arguing that the Grant Agreement requires Lewis & Clark to follow the competitive bidding statutes even if Lewis & Clark is not required by statue to do so, relies on *Griswold v. Ramsey County,* 242 Minn. 529, 65 N.W.2d 647 (1954). In the *Ramsey County* case the Supreme Court of Minnesota upheld the district court which declared void construction contracts awarded by the Ramsey County Board of County Commissioners and permanently enjoined the parties to the contract from proceeding with the work involved in the contract. Although not required to do so by statute, the Ramsey County Board of County Commissioners had adopted a method of advertising for competitive bids as a preliminary to the letting of a contract for the construction of a county jail.

In affirming the district court, the Supreme Court of Minnesota reasoned:

> [H]aving once adopted the competitive bidding method, the county board was required, as long as that method had not been seasonably abandoned, to pursue such method in a manner reasonably designed to accomplish its normal purpose of giving all contractors an equal opportunity to bid and of assuring to the taxpayers the best bargain for the least money.[footnote omitted] Clearly, whatever method is adopted in the letting of public contracts, such method may not, contrary to the public welfare, be pursued in an unreasonable, arbitrary, or capricious manner since the taxpayers are entitled to rely for their protection upon the safeguards which are inherent in whatever method is employed.

*Ramsey County*, 65 N.W.2d at 535.

Even if the Court were applying Minnesota not South Dakota law in this case, the *Ramsey County* case, unlike the case at hand, deals with the obligations of a public entity, not a private nonprofit corporation, with regard to competitive bidding. Plaintiff SJL was not a party to the Grant Agreement which established requirements for the receipt of some of the funding applicable to the project in issue and which provided for a method of resolving any controversies if the South Dakota Conservancy District believed the Grant Agreement had been violated. SJL has not provided any authority which would establish it has standing to challenge Lewis & Clark's bidding procedures based on the provisions of the Grant Agreement. Since SJL and the taxpayer John and Jane Doe lack standing, this lawsuit must be dismissed. Accordingly,

> **IT IS ORDERED** that the Defendant's Motion to dismiss (Doc. 5) is granted for the reasons set forth in this memorandum opinion.
>
> Dated this ___ day of August, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
(SEAL)       DEPUTY